**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA          :
                                  :
       v.                         :          Criminal Action No.:  92-345 (RC)
                                  :
ANDRE P. BROWN,                   :          Re Document No.:    87
                                  :
       Defendant.                 :

**MEMORANDUM OPINION AND ORDER**

**GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

**I.  INTRODUCTION**

Defendant, Mr. Andre Brown, filed a motion for compassionate release pursuant to D.C.

Code § 24-403d on May 18, 2020 and a supplement to his original motion on May 29, 2020 that

added Section 3582 of Title 18 of the United States Code as an alternative basis for relief.  Def.'s

Mot. Compassionate Release ("Def.'s Mot."), ECF No. 87; Def.'s Supp. Mot. Compassionate

Release ("Def.'s Supp."), ECF No. 89.  Mr. Brown is currently serving a sentence stemming

from a parole revocation based on convictions, secured in 1992, of armed assault on a police

officer, carrying a pistol without a license, and use of a firearm in connection with a drug

trafficking offense.  As further described below, Section 3582 gives this Court jurisdiction to

reduce the term of imprisonment upon a criminal defendant's motion that establishes

extraordinary and compelling reasons that warrant such relief.  In his motion, Mr. Brown

explains that he suffers from chronic obstructive pulmonary disease ("COPD"), diabetes, and

morbid obesity and he asks the Court for a reduction to his sentence based on the very real risk

of contracting COVID-19 while imprisoned and succumbing to the disease due to his underlying

health conditions.  As the Court noted during oral argument, while Mr. Brown undoubtedly

committed serious offenses, he was not sentenced to death.  Given the lengthy sentence Mr.

Brown has already served, his underlying conditions, the risk of serious illness or death due to

the COVID-19 pandemic, and for the reasons set forth below, the Court grants Mr. Brown's

motion for compassionate release.

## II.  BACKGROUND

### A.  Motions for Compassionate Release Under 18 U.S.C. 3582(c)(1)(A)[1]

#### 1.  Jurisdiction

While federal courts are generally forbidden "to modify a term of imprisonment once it

has been imposed . . . [the] rule of finality is subject to a few narrow exceptions." *Freeman v.*

*United States*, 564 U.S. 522, 526 (2011) (internal quotation marks and citation omitted).  Section

3582(c)(1) of Title 18 of the United States Code provides one such exception.  As amended by

the First Step Act of 2018, Section 3582(c)(1) allows

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of
> the defendant after the defendant has exhausted all administrative rights to appeal
> a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or
> the lapse of 30 days from the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce the term of imprisonment
> (and may impose a term of probation or supervised release with or without
> conditions that does not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth in section 3553(a) to the
> extent that they are applicable, if it finds that . . . extraordinary and compelling
> reasons warrant such a reduction . . . and that such a reduction is consistent with
> applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1).  Section 3582 thus supplies jurisdiction to modify the term of

imprisonment.  The question remains, however, whether the exhaustion requirement is a

---

[1] Mr. Brown initially moved for compassionate release pursuant to D.C. Code § 24-403d.
In a supplemental filing, Mr. Brown added section 3582 as an alternative basis for the requested
relief.  Because the Court finds Mr. Brown is entitled to compassionate release under section
3582, the Court does not address the applicability of D.C. Code § 24-403d.

necessary component of that jurisdictional grant, or merely a non-jurisdictional, claim-processing mandate. *See United States v. Johnson*, No. 15-cr-125, ECF No. 223 at 6–7 (D.D.C. May 16, 2020) (discussing whether exhaustion requirement is jurisdictional).

Every court in this District to consider whether the exhaustion requirement is jurisdictional has concluded it "is *not* jurisdictional and is thus subject to equitable waiver by the court." *Id.* (consolidating cases). Courts have reached this conclusion based on D.C. Circuit precedent stating that, "in order for an exhaustion requirement to be deemed jurisdictional, Congress has to state 'in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision." *Id.* (quoting *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1248 (D.C. Cir. 2004)). Courts in this District reason that because Section 3582(c)(1) does not contain such unequivocal terms, the exhaustion requirement is not jurisdictional.

## 2.  Equitable Waiver

Generally, when exhaustion requirements are non-jurisdictional, a party that fails to comply with procedural requirements may ask for equitable relief—such as equitable tolling, estoppel, or waiver. *Poole v. United States Government Publishing Office*, 258 F. Supp. 3d 193, 199 (D.D.C. 2017) (discussing equitable relief available for failure to exhaust administrative remedies in Title VII context). Such relief may be granted upon a showing of "good cause for the procedural failure." *Id.* (quoting *Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017)).

In the context of the COVID-19 pandemic, courts in this District have dispensed with the exhaustion requirement given the urgency of the situation and futility of asking the Bureau of Prisons ("BOP") for relief. *See, e.g.*, *United States v. Jennings*, No. 18-cr-17, ECF No. 30 at 3 (D.D.C. Apr. 22, 2020) ("The court also finds that waiving the exhaustion requirement is

appropriate here given the history of the compassionate release statute and the urgency of the

COVID-19 pandemic."); *United States v. Powell*, No. 94-cr-316, 2020 WL 1698194, at *1

(D.D.C. Mar. 28, 2020) ("[T]he Court finds that requiring the defendant to first seek relief

through the Bureau of Prisons' administrative process would be futile . . . ."); *Johnson*, ECF No.

223 at 21 (finding failure to exhaust administrative remedies would be excused on futility

grounds); *United States v. Ghorbani*, No. 18-cr-255, ECF No. 131 (D.D.C. Apr. 3, 2020)

(agreeing with parties' joint filing that a court can dispense with the administrative exhaustion

requirement under section 3582(c)(1)(A) where there are exceptional circumstances of peculiar

urgency or exhaustion would be futile).

### 3.  Substantive Standards

As noted above, Section 3582(c)(1) allows a court to reduce a term of imprisonment if it

finds that "after considering the factors set forth in section 3553(a) to the extent they are

applicable. . . extraordinary and compelling reasons warrant such a reduction . . . and that such a

reduction is consistent with applicable policy statements issued by the Sentencing Commission."

18 U.S.C. § 3582(c)(1).  Section 3553(a) requires that the "court shall impose a sentence

sufficient, but not greater than necessary, to comply with" the listed factors.  18 U.S.C. §

3553(a).  Those factors include the need for the sentence imposed "to reflect the seriousness of

the offense, promote respect for the law . . . afford adequate deterrence to criminal conduct . . .

[and] to protect the public from further crimes of the defendant."  *Id.*  The Sentencing

Commission has issued a policy statement regarding motions for compassionate release at

section 1B1.13 of the Guidelines Manual.  Among the various scenarios where "extraordinary

and compelling reasons warrant the reduction" of a term of imprisonment, the Guidelines

Manual includes situations where a defendant is "suffering from a serious physical or medical

condition . . . that substantially diminishes the ability of the defendant to provide self-care within" a prison environment.  U.S.S.G. § 1B1.13(1)(A).  The Guidelines Manual also indicates the court should determine that "the defendant is not a danger to the safety of any other person or to the community."  *Id.*  Section 3582(c)(1) therefore requires the Court to determine (1) whether extraordinary and compelling reasons exist for modification of the sentence, and (2) whether, in light of the section 3553(a) factors, including safety of the public, the prior term of imprisonment is nevertheless required "to achieve the purposes of punishment that compelled the court to impose" that original sentence.  *Johnson*, ECF No. 223 at 10.

### B.  Factual Background

Mr. Brown was convicted of armed assault on a police officer, in violation of D.C. Code § 22-505(b), and carrying a pistol without a license, in violation of D.C. Code § 22-3204(a), on December 21, 1992 following a five-day jury trial.  Gov't Opp'n at 2.  The facts presented at trial, as recounted by the government in its opposition to Mr. Brown's motion, showed that Mr. Brown "pointed a gun straight into" the face of a uniformed police officer.  *Id.* at 3.  The gun was fully loaded, and Mr. Brown had attempted to cock the hammer of the gun before officers apprehended him.  *Id.* at 3–4.  After trial, Mr. Brown filed a motion for a new trial, but before that motion was decided he pled guilty to use of a firearm in connection with a drug trafficking offense, in violation of 18 U.S.C. § 924(c), in exchange for the government's agreement to dismiss other charges.  *Id.* at 2.  Mr. Brown was sentenced to consecutive terms of incarceration of eighteen to fifty-four months for armed assault on a police officer and sixty months for the § 924(c) violation.  *Id.* at 4.  He was sentenced to a concurrent term of three to nine months of incarceration for carrying a pistol without a license.  *Id.*  On August 26, 1998, Mr. Brown was released on parole.  *Id.*

In January 2000, while on parole for the 1992 offenses, Mr. Brown was charged with four

counts of assault with intent to kill, in violation of D.C. Code §§ 22-401, 22-4502; one count of

mayhem while armed, in violation of D.C. Code §§ 22-406, 22-4502; one count of aggravated

assault while armed, in violation of D.C. Code §§ 22-404.1, 22-4502; six counts of possession of

a firearm during a crime of violence, in violation of D.C. Code § 22-4504(b); and multiple gun

possession offenses. *Id.* at 5.  After fleeing the jurisdiction, he was arrested in Georgia, and later

convicted on all counts (except for the gun possession offenses) on April 9, 2003 in D.C.

Superior Court. *Id.* at 6.  The evidence presented in this case showed that Mr. Brown had fired

multiple gunshots towards a group of individuals; one individual suffered a spinal cord injury as

a result of the shooting. *Id.* at 8–9.  Mr. Brown was eventually sentenced to an indeterminate

sentence on each count, resulting in a twenty-year sentence with a fifteen-year mandatory

minimum and an aggregate sentence of twenty to sixty years. *Id.* at 9.

After serving eighteen years, one month, and four days, Mr. Brown had satisfied his

sentence for the D.C. Superior Court convictions on April 21, 2020. *Id.*  However, because the

convictions constituted a parole violation for his 1992 convictions, a parole warrant issued the

same day. *Id.* at 9–10.  Mr. Brown's recalculated mandatory release date is July 13, 2022 and his

recalculated full term date is March 12, 2023. *Id.* at 10.  He is housed at FCI Butner Medium II.

*Id.*

Mr. Brown submitted a motion for compassionate release pursuant to D.C. Code § 24-

403d on May 18, 2020.  *See* Def.'s Mot. at 1.  After consultation with the government, during

which the government indicated it would argue the Court lacked jurisdiction under the D.C. law,

Mr. Brown's counsel, on May 29, 2020, filed a supplemental memorandum adding the First Step

Act amendments, codified at 18 U.S.C. § 3582(c)(1)(A), as an alternative basis for

compassionate release. *See* Def.'s Supp. at 2. The Court heard oral argument via video conference on June 26, 2020.

### III. ANALYSIS

### A. Jurisdiction and Waiver

The government argues that the Court lacks authority to act on Mr. Brown's motion because he has not exhausted all administrative rights to appeal. Gov't Opp'n at 18. Citing an opinion from the Third Circuit, the government contends that a failure to exhaust administrative appeals forecloses the possibility of compassionate release. *Id.* (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The government further argues that, even if the exhaustion requirement is not jurisdictional, Mr. Brown's failure to fulfill the requirements should not be excused by the Court. *See id.* at 22–24. Citing a number of cases from this District, Mr. Brown responds that the exhaustion requirement under section 3582(c)(1)(A) is not jurisdictional. *See* Def.'s Reply at 4–5, ECF No. 92. He argues that the exhaustion requirements should be waived in this case because he initially brought his motion under D.C. law, which does not have an exhaustion requirement, and because, as evidenced by the government's opposition to his motion, any attempt at securing administrative relief would be futile. *Id.* at 5. Mr. Brown also cites "the urgency of the devastating spread of COVID-19" as a reason to excuse the exhaustion requirement. *Id.* at 6.

As other courts in this District have found, the Court concludes that the exhaustion requirements in Section 3582 are not jurisdictional and are subject to equitable waiver. As noted above, Section 3582 does not contain an unequivocal statement that the exhaustion requirements serve as a jurisdictional hurdle. *See United States v. Johnson*, No. 15-cr-125, 2020 WL 3041923, at *3 (citing *United States v. Malone*, No. 13-cr-231, 2020 WL 1984261, at *1 (D.D.C. Apr. 27,

2020)); *United States v. Jennings*, No. 18-cr-17, ECF No. 30 at 3 (D.D.C. Apr. 22, 2020); *United States v. Ghorbani*, No. 18-cr-255, ECF No. 131 (D.D.C. Apr. 3, 2020); *United States v. Powell*, No. 94-cr-316, 2020 WL 1698194, at *1 (D.D.C. Mar. 28, 2020); *United States v. Morris*, No. 12-cr-154, 2020 WL 2735651, at *3 (D.D.C. May 24, 2020).  This Court joins the others in this District that have concluded the exhaustion requirements of Section 3582 are not jurisdictional in nature.

The Court also concludes that although Mr. Brown admittedly did not comply with the exhaustion requirements, good cause exists to dispense with them in this case.  First, the COVID-19 pandemic creates an urgency to address Mr. Brown's motion as quickly as possible—the exhaustion requirements would delay the requested relief where every day represents a new opportunity for potential infection.  Second, given the government's opposition to Mr. Brown's motion, any attempt to comply with the exhaustion requirements would be futile. It is highly unlikely that BOP would consent to Mr. Brown's release where the government has opposed his motion.  And even if BOP decided to submit a motion for compassionate release on Mr. Brown's behalf, the inquiry would be identical to what is required by the Court today.  *See Morris*, 2020 WL 2735651, at *6.  It makes little sense to delay the inquiry given the urgency created by the pandemic.  *See also id.* (explaining that the 30-day rule of section 3582(c)(1)(A) was meant to accelerate judicial review not create an obstacle).  For these reasons, the Court turns to the merits of Mr. Brown's motion.

### B.  Substantive Standards

#### 1.  Extraordinary and Compelling Reasons for Release

Mr. Brown argues that his preexisting conditions in conjunction with the spread of COVID-19 in prison facilities provide extraordinary and compelling reasons for reducing his

prison term.  Mr. Brown suffers from chronic medical conditions that include morbid obesity,

diabetes, and COPD.  Def.'s Supp. at 8.  Mr. Brown is "nearly 400 pounds, [] takes insulin,

blood pressure medication, and cholesterol medication; uses catheters to evacuate his bladder;

and requires a nebulizer, an oxygen concentrator, and a Continuous Positive Airway Pressure

(CPAP) machine."  *Id.*  In its opposition, the government essentially concedes that Mr. Brown

suffers from serious medical conditions that amount to "extraordinary and compelling reasons"

for release.  *See* Gov't Opp'n at 27.  The government states that it "acknowledges that defendant

presents risk factors identified by the CDC as heightening the risk of severe injury or death were

he to contract COVID-19."  *Id.*

The Court takes note of the factual findings made in a recent case in the Eastern District

of North Carolina that considered the conditions of FCI Butner, including the FCI Butner

Medium II, where Mr. Brown is presently incarcerated.  The court made the following findings:

> At the medium-custody facilities, inmates are housed in cells approximately eight
> feet long and six feet wide, which hold two to four people.  Inmates in these units
> share toilets and sinks with their cellmates and showers with everyone on their 120-
> person units . . . inmates in the medium-custody facilities do not socially distance
> when they are in lines for computers or phones, and the equipment is cleaned
> approximately once daily.  Meals and medications are delivered to cells by staff or
> inmate orderlies, who also have access to other areas of the prison.  [Federal Bureau
> of Prisons] staff provide medium-custody inmates with disinfectant spray in order
> to clean the cells, but these products are not always available.

*Charles Halliana, et al. v. Warden Thomas Scarantino, et al.*, No. 5:20-HC-2088-FL, ECF No.

62 at 14 (E.D.N.C. June 11, 2020) (internal citations omitted).  Although the court denied the

plaintiffs temporary injunctive relief in that case, the factual findings indicate social distancing,

an important preventative measure in the face of the COVID-19 pandemic, *see* Center for

Disease Control and Prevention ("CDC"), *Social Distancing*,

https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html, (last

updated June 12, 2020), is difficult and often impossible in FCI Butner Medium II.

Furthermore, the Court credits the statements made by Mr. Brown during oral argument that

prison officials have not deployed wide-spread testing at his facility, making it impossible to

know whether the virus is currently spreading among the prison population.

The Court finds that Mr. Brown has demonstrated extraordinary and compelling reasons

for release.  All parties agree that he has significant medical vulnerabilities that could lead to

drastic consequences if he contracted the virus.  And although his particular facility is not

currently a COVID-19 hotspot, the Court notes that it has not been entirely COVID-free and the

lack of testing may signify that the problem is worse than BOP is aware, increasing Mr. Brown's

risk of transmission.  Mr. Brown's underlying medical conditions—COPD, diabetes, and severe

obesity—all appear on the CDC's list of underlying conditions that create an increased risk of

severe illness.  *See* CDC, *Who is at Increased Risk for Severe Illness*,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html,

(last updated June 25, 2020).  If Mr. Brown contracts the virus, which continues to spread

throughout the country and within prisons, all parties agree that he would likely not fare well and

could face severe illness or death.  Although FCI Butner Medium II has not suffered a significant

outbreak of COVID-19, Mr. Brown's medical condition is sufficiently precarious that the Court

cannot risk waiting to see if such an outbreak materializes.  A wait and see strategy could prove

too late to take preventative action.  On this basis, the Court finds that Mr. Brown has

demonstrated extraordinary and compelling reasons for compassionate release.

### 2.  Factors Under Section 3553(a)

Mr. Brown argues that, despite the seriousness of the criminal conduct that led to his

incarceration, his release does not pose a danger to any person or to the community in general.

Def.'s Mot. at 7.  Mr. Brown's criminal conduct occurred between eighteen and twenty-eight

years ago.  *Id.*  He serves as a facilitator for the Alternatives to Violence Program and is a mentor

for other inmates through various programs.  *Id.* at 7–8.  Mr. Brown states that substantial

evidence demonstrates shows he has significantly reformed his life while incarcerated.  *Id.* at 8.

Moreover, Mr. Brown argues that his physical condition—a product of the underlying medical

issues from which he suffers—does not lend itself "to any assumption that he is capable of

posing a threat of harm to others if he is released."  *Id.* (citing *U.S. v. Curtis*, No. 03-cr-533, 2020

WL 1935543, at *5 (D.D.C. Apr. 22, 2020) and *U.S. v. Hammond*, No. 02-cr-294, 2020 WL

1891980, at *10 (D.D.C. Apr. 16, 2020)).  Mr. Brown also points to the fact that he has only had

minor disciplinary infractions in the last five years and no significant infractions involving

violence in at least ten years.  *Id.* at 7.

The government argues that Mr. Brown would pose a danger to public safety if released.

Gov't Opp'n at 28.  This argument is largely based on the seriousness of Mr. Brown's underlying

criminal conduct, but the government also notes his record of disciplinary infractions.  *See id.* at

28–29.  The government highlights the underlying facts of Mr. Brown's original criminal

conduct in 1992 and his subsequent offense while he was on parole that resulted in the parole

revocation and his current sentence.  *Id.*  These facts, according to the government, override the

asserted medical concerns because the "applicable § 3553(a) factors, taken as a whole, strongly

favor against a sentence reduction."  *Id.* at 29.

The Court finds that consideration of the § 3553(a) factors does not override Mr. Brown's

extraordinary and compelling reasons for a sentence reduction.  First, the Court notes the amount

of time that has passed since Mr. Brown's criminal conduct and the prison time he has already

served.  The convictions that underlie Mr. Brown's current sentence stem from conduct that took

place nearly thirty years ago and a parole violation that took place twenty years ago.  Mr. Brown

served eighteen years for the D.C. Superior Court case before his parole revocation sentence

started in April of this year.  Gov't Opp'n at 9.  Mr. Brown's recalculated mandatory release date

is July 13, 2020 and his recalculated full term date is March 12, 2023, *id.* at 9–10, so he does not

have much longer to serve on his sentence.  While the Court agrees with the government that the

underlying criminal conduct is serious and concerning, Mr. Brown is at the tail end of a lengthy

sentence, having spent a majority of the last thirty years behind bars.  Under the government's

theory of the defendant's dangerousness based on the severity of his underlying crimes, the

defendant should never be released.  But, in fact, he will be released in two years regardless of

whether this Court grants this motion.  So, the question before the Court is whether the public is

at greater risk from defendant's release now than it would be in two years.  The Court does not

believe so.  Accordingly, the Court finds that his sentence to date "reflect[s] the seriousness of

the offense," "afford[s] adequate deterrence to criminal conduct," and has "protect[ed] the public

from further crimes of the defendant."  18 U.S.C. § 3553(a)(2).

Second, the Court finds that the government's focus on the seriousness of the underlying

offenses, while important, should not be dispositive.  As counsel for Mr. Brown stated during

oral argument, if the government could defeat a motion for compassionate release simply by

citing the seriousness of the underlying offense, very few, if any, defendants who have served

lengthy sentences would be able to take advantage of the First Step Act.  Such a result appears

contrary to the purpose of the First Step Act amendments.  If the government's argument about

the underlying criminal conduct could defeat the motion on its own, Mr. Brown would never be

eligible for compassionate release, regardless of the extraordinary reasons established.

Finally, the Court credits Mr. Brown's argument that his physical condition makes it unlikely he would pose a threat to the public.  Mr. Brown appeared at oral argument in a wheelchair.  In a statement to the Court, he said his condition makes it impossible to move around without the wheelchair and that he regularly experiences numbness in his hands.  In combination with the lengthy sentence he has already served and the mentoring activities in which he participates, his condition suggests to the Court that he does not pose a threat to the public or any individual person.

Mr. Brown indicated that he is amenable to a term of home confinement and that his family has agreed to accommodate him if he is released.  While the Court does not find authority to modify the conditions of supervised release through section 3582(c)(1)(A), it does possess the authority pursuant to 18 U.S.C. § 3583(e)(2), which authorizes the Court to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release."  *See Johnson*, ECF No. 223 at 30–31 n.11.  The Court therefore reduces Mr. Brown's prison term pursuant to its authority under Section 3582(c)(1)(A) and modifies the conditions of supervised release to include home confinement and location monitoring pursuant to Section 3583(e)(2).

The COVID-19 pandemic and the virus's potential for uncontrolled spread in prisons present a grave and unique threat to Mr. Brown because of his underlying medical conditions.  Being particularly vulnerable to serious illness, defendant's contraction of the disease would pose a real possibility of death for him.  This constitutes an extraordinary and compelling reason to reduce Mr. Brown's sentence.  As explained above, the purposes for sentencing outlined in Section 3553(a) do not require the Court to maintain his original sentence, which, in any event, is set to conclude in a relatively short time.

13

## IV.  CONCLUSION

For the foregoing reasons, Mr. Brown's motion for compassionate release (ECF No. 87) is **GRANTED**.  Accordingly, it is hereby

**ORDERED** that Defendant's previous sentence of sixty months incarceration for Count II, eighteen to fifty-four months incarceration for Count IV, and three to nine months incarceration for Count V is reduced to time served.  It is

**FURTHER ORDERED** that, within 72 hours of release from custody, Defendant shall report to the Probation Office of the District of Columbia (with potential transfer of jurisdiction to California) to commence the 36-month term of supervised release that the original judgment imposes. It is

**FURTHER ORDERED** that the conditions of supervised release imposed in the original judgment will be **MODIFIED** as follows: Defendant will be required to serve the first 180 days of his 36-month term of supervised release under home incarceration, with location monitoring technology at the discretion of the Probation Office.  During this period of home incarceration, Defendant shall remain inside his residence at all times, except for medical necessities, attorney appointments, court appearances, and any other activities specifically approved by the Probation Office.  All other previously imposed conditions of supervised release remain unchanged.

**SO ORDERED**.

Dated:  July 2, 2020                                         RUDOLPH CONTRERAS
                                                             United States District Judge

14